**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GILBERTO COLON,** | : | **Civil No. 1:11-CV-1704** |
| | : | |
| **Plaintiff,** | : | |
| | : | **(Chief Judge Kane)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| | : | |
| **ROBERT KARNES, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

### I.   Statement of Facts and of the Case

The plaintiff, a prisoner housed in the Lebanon County Prison who is proceeding *pro se*, commenced this action by filing a complaint on September 13, 2011. (Doc. 1)  At the time he filed this complaint, Colon was a familiar *pro se* litigant to the Court, having previously lodged a similar *pro se* complaint with this Court. Colon v. Karnes, No. 1:11-CV-890.  This prior complaint, which was in many ways identical to the instant action, was dismissed by the Court on October 19, 2011.

As was the case with Colon's initial complaint, the complaint filed in this action made factual recitals that, in some instances, had  the quality of things that may be more imagined than real.  For example, Colon alleged in  these pleadings that he is the subject of an investigation into allegations that he sexually molested a child he claims

to be his daughter, and had been set up by the real child molesters for assassination by organized criminal gangs.  However, the documents Colon previously attached to the complaint in <u>Colon v. Karnes</u>, No. 1:11-CV-890, confirmed for Colon that no such investigation has ever existed.  Despite the longstanding denial that there is any such investigation, this alleged investigation–which Colon's prior pleadings reveal exists only in his imagination–served as a factual centerpiece of the *pro se* complaint.

Beyond these recitals, Colon's complaint went on to name six defendants and made the following cryptic allegations regarding these defendants:  First, Colon named the Warden at the Lebanon County Prison, Robert Karnes, as a defendant, but then simply alleged without any further detail that the warden is in charge of the prison. (<u>Id</u>.)  Colon then named a prison captain, Michael Ott as a defendant, and simply alleged that Ott caused him to be transferred from one housing unit to another inside the prison. (<u>Id</u>.)  Colon went on to charge a prison counselor, Carrie Everett, as a defendant alleging that she failed to copy legal papers for him on August 11, 2011.(<u>Id</u>.)  Finally, Colon named three parole officers– Sally Barry, Greg Cook, and James Newcomer–as defendants, alleging that these officials resisted his request for "parole denying me home plan and stating I am a menace to society."(<u>Id</u>.)  On the basis of these sparse allegations Colon sought damages from each defendant "in the amount of 1.2 million" (<u>Id</u>.)

Along with this complaint, Colon filed a motion for leave to proceed *in forma pauperis*. (Doc. 2)  On September 15, 2011, we issued a report and recommendation which recommended that this motion for leave to proceed *in forma pauperis* (Doc. 2), be granted but that Colon's complaint be dismissed for failure to state a claim upon which relief can be granted. (Doc. 5)

In response, Colon filed a motion for leave to amend his complaint, (Doc. 8),which was granted by the district court. (Doc. 18)  On October 20, 2011, we then entered an order which stated in clear and precise terms as follows:

> In this case, recognizing that no responsive pleadings have been filed, and mindful of the fact that leave to amend should be freely given when justice so requires, the motions to amend (Docs. 8 and 15) are GRANTED and the plaintiff is ORDERED to file an amended complaint on or before **November 10, 2011**. Any amended complaint shall be complete in all respects. It shall be a new pleading which stands by itself as an adequate complaint without reference to the complaint already filed. Any amended complaint shall be titled as an amended complaint and shall contain the docket number of this case.

(Doc. 20)

Following receipt of this clear instruction, Colon–inexplicably–filed yet another motion for leave to file an amended complaint on October 25, 2011. (Doc. 24)  We addressed that motion the day it was filed, plainly stating as follows:

> The Plaintiff, a prisoner who is proceeding *pro se*, previously filed pleadings which we construed as requests for leave to file an amended complaint.(Docs. 8 and 15) Accordingly, on October 20, 2011, we

granted these requests for leave to amend and the Plaintiff was ordered to file an amended complaint on or before **November 10, 2011**. Colon was advised in this October 20 order that any amended complaint should be complete in all respects. It should be a new pleading which stands by itself as an adequate complaint without reference to the complaint already filed. Any amended complaint should be titled as an amended complaint and should contain the docket number of this case. Despite this clear guidance Colon has now filed three more pleadings in the nature of motions to amend his complaint. (Docs. 22, 23 and 24) Since we have already granted prior motions seeking this relief and set a deadline of November 10, 2011, for the filing of a single comprehensive amended complaint, these motions (Docs. 22, 23 and 24) are DISMISSED as moot, and the Plaintiff is instructed to file an amended complaint on or before **November 10, 2011**. Any amended complaint should be complete in all respects. It should be a new pleading which stands by itself as an adequate complaint without reference to the complaint already filed. Any amended complaint should be titled as an amended complaint and should contain the docket number of this case.

(Doc. 25)

Despite these repeated instructions to file an amended complaint by November 10, 2011, Colon has not submitted a proper, amended complaint in this action. Instead, he has submitted letters arguing the merits of various claims set forth in his original complaint.  Thus, the only complaint in this case is the initial complaint which we found to be profoundly flawed.  In this setting where Colon seems unable to comply with directions from the Court, and correct flaws in his pleadings, it is recommended that this action be dismissed.

## II.   <u>Discussion</u>

### A.   Dismissal for Failure to Comply With Court Orders–Guiding Principles

Decisions regarding dismissal of actions as a sanction for failures to comply with court orders in civil litigation rest in the sound discretion of the Court, and will not be disturbed absent an abuse of that discretion. Emerson v. Thiel College, 296 F.3d 184, 190 (3d Cir. 2002)(citations omitted).  That discretion, however, while broad, is governed by certain factors, commonly referred to as Poulis factors.  As the United States Court of Appeals for the Third Circuit has noted:

> To determine whether the District Court abused its discretion [in imposing sanctions which affect the substantive outcome of litigation], we evaluate its balancing of the following factors: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863, 868 (3d Cir.1984).

Emerson, 296 F.3d at 190.

In exercising this discretion "there is no 'magic formula' that we apply to determine whether a District Court has abused its discretion in dismissing for failure to prosecute." Lopez v. Cousins, No. 10-1877,  2011 WL 2489897, *3 (3d Cir. June 23, 2011)(quoting Briscoe v. Klem, 538 F.3d 252 (3d Cir. 2008))  Therefore, "[i]n balancing the Poulis factors, [courts] do not [employ] a . . . 'mechanical calculation' to determine whether a District Court abused its discretion in dismissing a plaintiff's

case. <u>Mindek v. Rigatti</u>, 964 F.2d 1369, 1373 (3d Cir.1992)." <u>Briscoe v. Klaus</u>, 538 F.3d at 263.  Consistent with this view, it is well-settled that " 'no single <u>Poulis</u> factor is dispositive,' <u>Ware</u>, 322 F.3d at 222, [and it is] clear that 'not all of the <u>Poulis</u> factors need be satisfied in order to dismiss a complaint.' <u>Mindek</u>, 964 F.2d at 1373." <u>Briscoe v. Klaus</u>, 538 F.3d at 263.

Rather, in assessing these factors, we proceed from the premise that "dismissal with prejudice is a drastic sanction that is 'only appropriate in limited circumstances and doubts should be resolved in favor of reaching a decision on the merits.' <u>Briscoe</u>, 538 F.3d at 257 (citation omitted)." <u>Lopez v. Cousins</u>, 2011 WL 2489897 at *2. Accordingly, we begin by examining the degree of personal responsibility of a party in failing to comply with court orders, to determine whether those failures are inadvertent or willful.  In this setting, it has been held that willfulness involves "strategic," "intentional or self-serving behavior," and not mere negligence.  <u>Adams v. Trs. of N.J. Brewery Emps.' Pension Trust Fund</u>, 29 F.3d 863, 875 (3d Cir.1994). In this regard, "[g]enerally, '[w]illfulness involves intentional or self-serving behavior.' . . .  If the conduct is merely negligent or inadvertent, we will not call the conduct 'contumacious.' " <u>Briscoe v. Klaus</u>, 538 F.3d 252, 262 (3d Cir. 2008).

We also look to whether the failures by a party are isolated, or whether they represent a persistent history of dilatory behavior.  In this regard:

> "Extensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response to interrogatories, or

consistent tardiness in complying with court orders." <u>Adams,</u> 29 F.3d at 874; <u>see also Ware</u>, 322 F.3d at 224 (finding that a history of dilatory conduct existed because the plaintiffs "failed repeatedly" to provide a damages calculation for the defendant); <u>Emerson</u>, 296 F.3d at 191 (finding that a history of dilatory conduct existed because the "procedural history of this case reflects continuous dilatoriness" as demonstrated by the plaintiff's multiple requests for stays and failure to comply with multiple deadlines). . . . . However, conduct that occurs one or two times is insufficient to demonstrate a "history of dilatoriness." <u>See Scarborough v. Eubanks</u>, 747 F.2d 871, 875 (3d Cir.1984) (finding that, although the plaintiff's pretrial documents were "filed inexcusably late," it was not the same history of dilatoriness present in <u>Poulis,</u>747 F.2d at 868); <u>Donnelly v. Johns-Manville Sales Corp</u>., 677 F.2d 339, 343 (3d Cir.1982) (reinstating plaintiff's case where the plaintiff acted dilatory on one occasion but no evidence existed that the plaintiff's behavior was willful). Furthermore, we must evaluate "a party's problematic acts ... in light of its behavior over the life of the case." <u>Adams</u>, 29 F.3d at 875 (citing <u>Dyotherm Corp. v. Turbo Machine Co.</u>, 392 F.2d 146 (3d Cir.1968)).

<u>Briscoe v. Klaus,</u> 538 F.3d at 260-61.

Beyond this assessment of the nature and quality of the conduct of the party against whom sanctions are sought, we must also look to the harm or prejudice suffered by the party seeking dismissal as a sanction.  Indeed, this factor–the prejudice suffered by the party seeking sanctions–is entitled to great weight and careful consideration.  As the United States Court of Appeals for the Third Circuit has observed:

"Evidence of prejudice to an adversary would bear substantial weight in support of a dismissal or default judgment." <u>Adams v. Trustees of N.J. Brewery Employees' Pension Trust Fund</u>, 29 F.3d 863, 873-74 (3d Cir.1994) (internal quotation marks and citation omitted). Generally, prejudice includes "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly

irremediable burdens or costs imposed on the opposing party." Id. at 874 (internal quotation marks and citations omitted). . . . However, prejudice is not limited to "irremediable" or "irreparable" harm. Id.; see also Ware v. Rodale Press, Inc., 322 F.3d 218, 222 (3d Cir.2003); Curtis T. Bedwell & Sons, Inc. v. Int'l Fidelity Ins. Co., 843 F.2d 683, 693-94 (3d Cir.1988). It also includes "the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy." Ware, 322 F.3d at 222. Oftentimes, this type of prejudice involves disputes between the parties on discovery matters because the defendants were deprived of necessary information or had to expend costs to obtain court orders for compliance. See, e.g., Poulis, 747 F.2d at 868 (finding that the defendants were prejudiced where the plaintiffs did not answer interrogatories,the defendants had to file a motion to compel the plaintiffs' answers, and the defendant had "to file its pre-trial statement without the opportunity to review plaintiffs' pretrial statement which was due to be filed first"); Ware, 322 F.3d at 220-23 (affirming the District Court's conclusion that a defendant had been prejudiced where the plaintiff repeatedly ignored the defendant's discovery request for the plaintiff's computation of damages and did not provide it until one week prior to trial).

Briscoe  v. Klaus, 538 F.3d at 259-60.

### B.    Application of Poulis Principles to this Case Calls for Dismissal of this Action

In this case, a dispassionate assessment of the Poulis factors weighs heavily in favor of dismissing this action.  At the outset, a consideration of the first Poulis factor, the extent of the party's personal responsibility, shows that the delays in this case are entirely attributable to the plaintiff, who has failed to abide by court orders and has

not filed a proper amended complaint despite receiving detailed and explicit instructions from the court on two separate occasions.

Similarly, the second <u>Poulis</u> factor–the prejudice to the adversary caused by the failure to abide by court orders–also calls for dismissal of this action.  The plaintiff's failures to timely file an amended complaint as directed by the court or comply with court orders now delay the resolution of this action, and wholly frustrates our ability to address, or even understand, his claims.  In such instances, dismissal of the case clearly rests in the discretion of the trial judge. <u>Tillio v. Mendelsohn</u>, 256 F. App'x 509 (3d Cir. 2007) (failure to timely serve pleadings compels dismissal); <u>Reshard v. Lankenau Hospital</u>, 256 F. App'x 506  (3d Cir. 2007) (failure to comply with discovery compels dismissal); <u>Azubuko v. Bell National Organization</u>, 243 F. App'x 728 (3d Cir. 2007) (failure to file amended complaint prejudices defense and compels dismissal).

When one considers the third <u>Poulis</u> factor-the history of dilatoriness on the plaintiff's part–it becomes clear that dismissal of this action is now appropriate.  The plaintiff has now failed to timely file pleadings, and  comply with orders of the Court.  Thus, Colon's conduct now fits the paradigm of dilatory behavior: "Extensive or repeated delay or delinquency . . . , such as consistent . . . tardiness in complying with court orders." <u>Adams,</u> 29 F.3d at 874

The fourth <u>Poulis</u> factor–whether the conduct of the party or the attorney was willful or in bad faith–also cuts against the plaintiff.  At this juncture, when the plaintiff has failed to comply with instructions of the Court directing the plaintiff to take specific actions in this case, the Court is compelled to conclude that the plaintiff's actions are not accidental or inadvertent but instead reflect an intentional disregard for this case and the Court's instructions.

While <u>Poulis</u> also enjoins us to consider a fifth factor, the effectiveness of sanctions other than dismissal, cases construing <u>Poulis</u> agree that in a situation such as this case, where we are confronted by a *pro se* litigant who will not comply with the rules or court orders,  lesser sanctions may not be an effective alternative. <u>See, e.g., Briscoe v. Klaus</u>, 538 F.3d 252, 262-63 (3d Cir. 2008); <u>Emerson</u>, 296 F.3d at 191.  This case presents such a situation where the plaintiff's status as a *pro se* litigant severely limits the ability of the court to utilize other lesser sanctions to ensure that this litigation progresses in an orderly fashion.  In any event, by entering our prior orders, and counseling the plaintiff on his obligations in this case, we have endeavored to use lesser sanctions, but to no avail.  The plaintiff still declines to obey court orders, and otherwise ignores his responsibilities as a litigant.  Since lesser sanctions have been tried, and have failed, only the sanction of dismissal remains available to the Court.

Finally, under <u>Poulis</u> we are cautioned to consider one other factor,  the meritoriousness of the plaintiff's claims.  In our view, however, consideration of this factor also weighs heavily in favor of dismissal of this action since Colon's claims fail on their merits.  The merits analysis of these claims is set forth below:

## C.   Colon's Claims Fail On Their Merits

This Court has an on-going statutory obligation to conduct a preliminary review of *pro se* complaints which seek redress against government officials.  Specifically, we are obliged to review the complaint pursuant to 28 U.S.C. § 1915A which provides, in pertinent part:

> **(a) Screening**. - The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a  prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>
> **(b) Grounds for dismissal**. - On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-
>
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be  granted; or
>
> (2) seeks monetary relief from a defendant who is immune from such relief.

Under Section 1915A, the Court must assess whether a *pro se* complaint "fails to state a claim upon which relief may be granted."  This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides

that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly,</u> 550 U.S. 544 (12007) continuing with our opinion in <u>Phillips v. County of Allegheny,</u> 515 F.3d 224, 230 (3d Cir. 2008) and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside,</u> 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. <u>Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.,</u> 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." <u>Morse v. Lower Merion Sch. Dist.,</u> 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not

alleged."  Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).  As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do."  Id. at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level."  Id.  In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss.  In Ashcroft v. Iqbal, __U.S. __, 129 S.Ct. 1937 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  Id. at 1950.  According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 1949.  Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 1950.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a complaint must recite factual allegations  sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation.  As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action. Applying these standards, we find that Colon's original complaint, the only complaint lodged in this action, remains subject to summary dismissal.

### 1. Colon's Latest Complaint Fails to Comply with Rule 8's Requirement that a Complaint Contain a "Short and Plain" Statement of a Cause of Action

At the outset, we find that dismissal of this complaint is warranted because Colon's complaint still fails to comply with Rule 8's basic injunction that: "A pleading

that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."

It is well-settled that: "[t]he Federal Rules of Civil Procedure require that a complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2), and that each averment be 'concise, and direct,' Fed. R. Civ. P. 8(e)(1)." Scibelli v. Lebanon County, 219 F. App'x 221, 222 (3d Cir. 2007). Thus, when a complaint is "illegible or incomprehensible", id., or when a complaint "is not only of an unwieldy length, but it is also largely unintelligible", Stephanatos v. Cohen, 236 F. App'x 785, 787 (3d Cir. 2007), an order dismissing a complaint under Rule 8 is clearly appropriate. See, e.g., Mincy v. Klem, 303 F. App'x 106 (3d Cir. 2008); Rhett v. New Jersey State Superior Court, 260 F. App'x 513 (3d Cir. 2008); Stephanatos v. Cohen, supra; Scibelli v. Lebanon County, supra; Bennett-Nelson v. La. Bd. of Regents, 431 F.3d 448, 450 n. 1 (5th Cir.2005).

These general legal principles governing adequacy of civil complaints call for dismissal of this complaint in its current state. With respect to the defendants named in this action, it is unclear what actions they are alleged to have taken, and when they are alleged to have taken those actions. This failure to articulate in the complaint a basis for holding these defendants accountable for some violation of the constitution or other federal law also requires dismissal of these defendants from this lawsuit. See

Thomas v. Conway, No. 04-1137, 2005 WL 2030304 (M.D. Pa. July 21, 2005)(failure to name defendant in body of complaint compels dismissal).

### 2.    The Specific Claims Made By Colon  Fail As a Matter of Law

Beyond these broad failings, Colon's complaint  suffers from a series of more specific shortcomings, shortcomings that independently compel the dismissal of the claims and defendants set forth in that complaint.  These separate, specific flaws are discussed below:

### a.    The Parole Officers Named in This Lawsuit Are Entitled to Qualified Immunity.

At the outset, to the extent that Colon seeks in his complaint to hold a state parole officers personally liable for civil rights violations based solely on an assertion that they are resisting his request for "parole denying me home plan and stating I am a menace to society,"(Doc. 1), it is well-settled that these officials are entitled to qualified immunity from damages.  See e.g., Wilson v. Rackmill, 878 F.2d 772 (3d Cir. 1989); Harper v. Jeffries, 808 F.2d 281 (3d Cir. 1986).  Government officials like parole officers who perform "discretionary functions," are insulated from suit if their conduct did not violate a "clearly established statutory or constitutional right[] of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609 (1999); see also Pearson v. Callahan, —U.S.—, 129 S. Ct. 808, 815 (2009).  This

doctrine, known as qualified immunity, provides officials performing discretionary functions not only defense to liability, but also "immunity from suit."  Crouse v. S. Lebanon Twp., 668 F. Supp. 2d 664, 671 (M.D. Pa. 2009) (Conner, J.) (citations omitted).  Qualified immunity

> balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.  The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."

Pearson, 129 S. Ct. at 815

Determinations regarding qualified immunity, and its application in a given case, require a court to undertake two distinct inquiries.  First, the court must evaluate whether the defendant violated a constitutional right.  Saucier v. Katz, 533 U.S. 194, 201-02 (2001), abrogated in part by Pearson, 129 S. Ct. 808; Curley v. Klem, 499 F.3d 199, 206 (3d Cir. 2007); Williams v. Bitner, 455 F.3d 186, 190 (3d Cir. 2006).  If the defendant did not actually commit a constitutional violation, then the court must find in the defendant's favor.  Saucier, 533 U.S. at 201.  If the defendant is found to have committed a constitutional violation, the court must undertake a second, related inquiry to assess whether the constitutional right in question was "clearly established" at the time the defendant acted.  Pearson, 129 S. Ct. at 815-16; Saucier, 533 U.S. at 201-02.  The Supreme Court has instructed that a right is clearly established for

purposes of qualified immunity if a reasonable state actor under the circumstances would understand that his conduct violates that right.  Williams, 455 F.3d at 191 (citing Saucier, 533 U.S. at 202).

In order to find that a right is clearly established, "the right allegedly violated must be defined at the appropriate level of specificity." Wilson, 526 U.S. at 615.  The Supreme Court has explained that, at least in some cases, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful." Hope v. Pelzer, 536 U.S. 730, 741 (2002) (quoting United States v. Lanier, 520 U.S. 259, 271 (1997) (internal quotation marks and citation omitted)).  In some cases, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." Wilson, 455 F.3d at 191 (quoting Hope, 536 U.S. at 741).

The court is no longer required to conduct these two inquiries sequentially, Pearson, 129 S. Ct. at 820, and it may forego difficult constitutional issues and award qualified immunity to a defendant if it is apparent that the defendant did not violate rights that were clearly established at the time the defendant acted. Id.  Where a court elects to address the alleged constitutional violations, however, the court's analysis of the merits for purposes of summary judgment merges with analysis of the deprivation of federal rights for purposes of qualified immunity. Gruenke v. Seip, 225

F.3d 290, 299-300 (3d Cir. 2000); Crouse, 668 F. Supp. 2d at 671; see also Grant v. City of Pittsburgh, 98 F.3d 116, 122 (3d Cir. 1996) ("[C]rucial to the resolution of [the] assertion of qualified immunity is a careful examination of the record . . . to establish . . . a detailed factual description of the actions of each individual defendant (viewed in a light most favorable to the plaintiff).")  Because qualified immunity entails a consideration of whether the law was clearly established at the time of a defendant's conduct, this defense, which focuses on the state of the law, presents a question of law for the court, and one which can often be resolved on summary judgment. See Montanez v. Thompson, 603 F.3d 243 (3d Cir. 2010).

In this case, where Colon simply alleges that these parole officers oppose his release because they consider him a menace to society, it cannot be said that the actions of the officers violate any clearly established rights of the plaintiff.  Quite the contrary, on the facts alleged by Colon these parole officers are faithfully executing their duties by opposing the release of someone they regard as a menace to society.

In this setting these parole officers simply could not have recognized that their actions would violate "clearly established statutory or constitutional right[] of which a reasonable person would have known."  Wilson v. Layne, 526 U.S. 603, 609 (1999). Therefore, these defendants are entitled to qualified immunity.[1]

---

[1]This Court is entitled to address this defense *sua sponte*, when appropriate. See Doe v. Delie, 257 F.3d 309 (3d Cir. 2001) (affirming *sua sponte* recommendation of qualified immunity by U.S. magistrate judge).

### b.      Colon Has Failed to State A Claim Against Prison Supervisors

Moreover, Colon's complaint names Warden Karnes and Captain Lott as defendants, but is bereft of any factual allegations regarding misconduct by these defendants.  It is clear that a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was the prison warden, or a prison supervisor, when the incidents set forth in the complaint occurred.  Quite the contrary, to state a constitutional tort claim the plaintiff must show that the supervisory defendants actively deprived him of a right secured by the Constitution.  Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v.Thiboutot, 448 U.S. 1 (1980).  Constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice. Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

> In particular, with respect to prison supervisors it is well-established that:
> "A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988).

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

> As the Supreme Court has observed:

> Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior.* . . . See <u>Monell v. New York City Dept. of Social Servs.</u>, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); see also <u>Dunlop v. Munroe</u>, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's liability "will only result from his own neglect in not properly superintending the discharge" of his subordinates' duties); <u>Robertson v. Sichel</u>, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties"). Because vicarious liability is inapplicable to <u>Bivens</u> and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution

<u>Ashcroft v. Iqbal</u>,  129 S.Ct. 1937, 1948 (2009).

Applying these benchmarks, courts have frequently held that, in the absence of evidence of supervisory knowledge and approval of subordinates' actions, a plaintiff may not maintain an action against supervisors based upon the misdeeds of their subordinates. <u>O'Connell v. Sobina</u>, No. 06-238, 2008 WL 144199, * 21 (W.D. Pa. Jan. 11, 2008); <u>Neuburger v. Thompson</u>, 305 F. Supp. 2d 521, 535 (W. D. Pa. 2004).

Nor can inmates sustain claims against prison officials based solely upon assertions that those officials have moved him from one housing unit to another inside the prison.  Such prison unit transfers, standing alone, simply do not implicate fundamental constitutional rights of prisoners. <u>See</u> <u>Sandin v. Conner</u>, 515 U.S. 472 (1995).  As the United States Court of Appeals for the Third Circuit has explained:

[i]n <u>Sandin v. Conner</u>, the Supreme Court announced a new standard for determining whether prison conditions deprive a prisoner of a liberty interest that is protected by procedural due process guarantees.  Although the Court acknowledged that liberty interests could arise from means other than the Due Process Clause itself, the Court concluded that state-created liberty interests could arise only when a prison's action imposed an '*atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life*.' . . . In finding that the prisoner's thirty-day confinement in disciplinary custody did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest, the Court considered the following two factors: 1) the amount of time the prisoner was placed into disciplinary segregation; and 2) whether the conditions of his confinement in disciplinary segregation were significantly more restrictive than those imposed upon other inmates in solitary confinement.

<u>Shoats v. Horn</u>, 213 F.3d 140, 143-44 (3d Cir. 2000)(emphasis added).

Here, in the absence of other, well-pleaded facts, Colon's complaint that he received a disciplinary transfer within the prison simply does not implicate a constitutionally protected liberty interest.  Therefore, that claim should be dismissed.

Thus, fairly construed, Colon's claims against the supervisory prison defendants named in his complaint consist of little more than assertions of *respondeat superior* liability, coupled with dissatisfaction with a transfer between housing units in the prison, assertions which as a matter of law do not suffice to state a constitutional tort claim.  Therefore, these defendants are also entitled to be dismissed from this case.

c.    **<u>Colon Has Not Stated a Claim Against Counselor Everett</u>**

Further, to the extent that Colon charges a prison counselor, Carrie Everett, as a defendant alleging that she failed to copy legal papers for him on August 11, 2011, his complaint fails to state a claim upon which relief can be granted.  The gravamen of this particular complaint seems to be that Everett unlawfully interfered with Colon's access to the courts.  Colon faces an exacting burden in advancing this claim. Since 1977, the United States Supreme Court has recognized that inmates have a constitutional right of access to the courts.  Bounds v. Smith, 430 U.S. 817 (1977). As the Supreme Court initially observed, this right of access to the courts is satisfied when corrections officials facilitate "meaningful" access for those incarcerated, either through legal materials or the assistance of those trained in the law. Id. at 827 ("[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.")

Two decades later, in 1996, the Supreme Court provided further definition and guidance regarding the scope and nature of this right of access to the courts in Lewis v. Carey, 518 U.S. 343 (1996).  In Lewis, the Court eschewed efforts to define this right in abstract, or theoretical terms, but rather cautioned courts to focus on concrete outcomes when assessing such claims.  As the Court observed:

Because <u>Bounds</u> did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's . . . legal assistance program is subpar in some theoretical sense. . . . Insofar as the right vindicated by <u>Bounds</u> is concerned, "meaningful access to the courts is the touchstone," <u>id.</u>, at 823, 97 S.Ct., at 1495 (internal quotation marks omitted), and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the  . . . legal assistance program hindered his efforts to pursue a legal claim. . . . . Although <u>Bounds</u> itself made no mention of an actual-injury requirement, it can hardly be thought to have eliminated that constitutional prerequisite. And actual injury is apparent on the face of almost all the opinions in the 35-year line of access-to-courts cases on which <u>Bounds</u> relied, see <u>id.</u>, at 821-825, 97 S.Ct., at 1494-1497. Moreover, the assumption of an actual-injury requirement seems to us implicit in the opinion's statement that "we encourage local experimentation" in various methods of assuring access to the courts. <u>Id.</u>, at 832, 97 S.Ct., at 1500.

<u>Lewis v. Casey</u>, 518 U.S. 343, 351-52 (1996).

Thus, following <u>Lewis</u> courts have consistently recognized two guiding principles which animate access-to-court claims by prisoners.  First, such claims require some proof of an actual, concrete injury, in the form of direct prejudice to the plaintiff in the pursuit of some legal claim. <u>See, e.g.</u>, <u>Oliver v. Fauver</u>, 118 F.3d 175 (3d Cir. 1997); <u>Demeter v. Buskirk</u>, No. 03-1005, 2003 WL 22139780 (E.D. Pa. Aug. 27, 2003); <u>Castro v. Chesney</u>, No. 97-4983, 1998 WL 150961 (E.D. Pa. March 31, 1998).  Moreover, consistent with the Supreme Court's express view that " 'we encourage local experimentation' in various methods of assuring access to the courts,"

Lewis v. Casey, 518 U.S. at 352, courts have long recognized that public officials can provide meaningful access to the courts through a wide variety of means.

In this case, Colon has not alleged or shown actual concrete prejudice to him in the litigation of a particular case, the essential prerequisite to a constitutional claim in this setting. Quite the contrary, the record affirmatively reveals that Colon has been an active, indeed a prolific litigator, who has filed numerous pleadings without any apparent delay or outside impediment. Since it appears that Colon has enjoyed full and untrammeled access to the courts, Colon is not entitled to relief on this particular constitutional claim.

### d.   Colon's Request for Unliquidated Damages Is Improper

Further, we note that the demand for specified compensatory damages from each defendant is inappropriate. Rule 12(f) of the Federal Rules of Civil Procedure imposes a duty on the court to review pleadings and provides that the court may upon its own initiative at any time order stricken from any pleading any immaterial matter. Fed. R. Civ. P. 12(f). Decisions regarding whether claims may be stricken from a complaint are properly presented to a United States Magistrate Judge for determination in the first instance. Singh v. Superintending School Committee of the City of Portland, 593 F. Supp. 1315 (D. Me. 1984). In this case, the plaintiff's claim for a specified amount of unliquidated damages violates Local Rule 8.1 which

provides, in part, that: " The demand for judgment required in any pleading in any

civil action pursuant to Fed. R. Civ. P. 8(a)(3) may set forth generally that the party

claiming damages is entitled to monetary relief <u>but shall not claim any specific sum</u>

<u>where unliquidated damages are involved.</u> The short plain statement of jurisdiction,

required by Fed.R. Civ.P.8(a)(1), shall set forth any amounts needed to invoke the

jurisdiction of the court but no other." Local Rule 8.1 (emphasis added).  Since this

prayer for relief violates Local Rule 8.1 by specifying a particular amount of

unliquidated damages, it is further recommended that this specific dollar claim be

stricken from the complaint.  While Colon has submitted letters which lower this

demand to $400,000, (Doc. 23), this change does not address this fundamental flaw

in his pleading and still compels the Court to strike that prayer for relief.

    We recognize that in civil rights cases *pro se* plaintiffs often should be afforded

an opportunity to amend a complaint before the complaint is dismissed in its entirety,

<u>See Fletcher-Hardee Corp. v. Pote  Concrete Contractors</u>, 482 F.3d 247, 253 (3d Cir.

2007), unless granting further leave to amend would be futile or result in undue delay.

<u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004).   Since Colon's latest *pro se*

complaint still does not comply with these pleading rules, and does not contain

sufficient factual recitals to state a claim upon which relief may be granted, these

allegations should be dismissed under 28 U.S.C. § 1915A, and Rule 12(b)(6) of the

Federal Rules of Civil Procedure.  Moreover, since the factual and legal grounds

proffered in support of the complaint make it clear that he has no right to relief, granting further leave to amend would be futile or result in undue delay. <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004).  Therefore, it is recommended that the complaint be dismissed without further leave to amend.

**III**.   **<u>Recommendation</u>**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the plaintiff's complaint (Doc. 1) should be dismissed with prejudice.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 17th day of November, 2011.

_S/Martin C.  Carlson_
Martin C. Carlson
United States Magistrate Judge